# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

IN RE:                                                           CASE NO.: 13-20120-LMI
                                                                              CHAPTER 13

**Michel Jarbath,**

   **Debtor.**

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION

Secured Creditor, NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, by and through the undersigned counsel, hereby moves this Court, pursuant to 11 U.S.C. § 362(d), for a modification of the automatic stay provisions for cause, and, in support thereof, states the following:

1. Debtor(s), MICHEL JARBATH, filed a voluntary petition pursuant to Chapter 13 of the United States Bankruptcy Code on April 30, 2013.

2. Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a), and all other applicable rules and statutes affecting the jurisdiction of the Bankruptcy Courts generally.

3. On December 11, 2007, Michel Jarbath executed and delivered an Adjustable Rate Note (Home Equity Conversion) ("Note") and Michel Jarbath and Rozinska Jarbath signed an Adjustable Rate Home Equity Conversion Mortgage ("Mortgage") securing payment of the Note up to the amount of $442,500.00 to PACIFIC REVERSE MORTGAGE, INC. / DBA FINANCIAL HERITAGE. The Mortgage was recorded on December 26, 2007 in Book 26127 at Page 3270 of the Public Records of Miami-Dade County, Florida.  The loan was transferred to Secured Creditor. True and accurate copies of documents establishing a perfected security interest and ability to enforce the terms of the Note are attached hereto as Composite Exhibit "A."  The documents include copies of the Note with any required indorsements, Recorded

Mortgage, Assignment(s) of Mortgage, and any other applicable documentation supporting the right to seek a lift of the automatic stay and foreclose, if necessary.

4.      The mortgage provides Secured Creditor a lien on the real property located in Miami-Dade County, Florida, and legally described as follows:

THE FOLLOWING DESCRIBED LAND LOCATED IN THE COUNTY OF MIAMI-DADE, STATE OF FLORIDA, TO-WIT:

THE NORTH 1/2 OF THE SOUTH 1/2 OF LOT 160, ARCH CREEK ESTATE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 46, PAGE 73 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

This property is located at the street address of: 14325 NE 12TH AVENUE, MIAMI, FL 33161.

5.      The terms of the aforementioned Note and Mortgage have been in default, and remain in default, since January 22, 2015. The Debtor(s) failed to maintain insurance on the subject property. See Secured Creditor's statement in regard to indebtedness and default, attached hereto and incorporated herein as Exhibit "B."

6.      As per the Indebtedness Worksheet attached hereto, Secured Creditor is due the pre-petition amount of $0.00 and the post-petition amount of $3,193.91. See Exhibit "C" attached hereto.  The post-petition payment address is: 3900 Capital City Blvd., Lansing, MI 48906.

7.      The appraised value of the property is $101,279.00.  See Exhibit "D" which is attached hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

8.      Based upon the Debtor(s)' Third Amended Chapter 13 Plan (Docket No. 26), the Debtor is curing through the Plan, however, there has been a post-petition insurance default.

9.      Secured Creditor's security interest in the subject property is being significantly jeopardized by Debtor(s)' failure to comply with the terms of the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest.  Secured Creditor has no protection against the erosion of its collateral position and no other form of adequate protection is provided.

10.     If Secured Creditor is not permitted to enforce its security interest in the collateral or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

11.     Secured Creditor respectfully requests this Court grant it relief from the Automatic Stay in this case pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of adequate protection to Secured Creditor for its interest in the above stated collateral.  The value of the collateral is insufficient in and of itself to provide adequate protection which the Bankruptcy Code requires to be provided to the Secured Creditor. Secured Creditor additionally seeks relief from the Automatic Stay pursuant to §362(d)(2) of the Bankruptcy Code, as the collateral is unnecessary to an effective reorganization of the Debtor's assets.

12.     Once the stay is terminated, the Debtor will have minimal motivation to insure, preserve, or protect the collateral; therefore, Secured Creditor requests that the Court waive the 14-day stay period imposed by Fed.R.Bankr.P. 4001(a)(3).

13.     Secured Creditor has incurred court costs and attorney's fees in this proceeding and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the property, all of which additional sums are secured by the lien of the mortgage.  Secured Creditor seeks an award of its reasonable attorneys' fees and costs, or alternatively, leave to seek recovery of its reasonable attorneys' fees and costs in any pending or subsequent foreclosure proceeding.

14.     A Proposed Order accompanies this Motion.  See Exhibit "E" attached hereto.

**WHEREFORE**, Secured Creditor, prays this Honorable Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) to permit Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain possession of said collateral, to waive the 14-day stay imposed by Fed.R.Bankr.P. 4001(a)(3), to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding, and to any such further relief as this Honorable Court deems just and appropriate.

**I HEREBY CERTIFY** that on May 20, 2016 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via CM/ECF or United States Mail to the following parties:

JACQUELINE C LEDON
3000 BISCAYNE BLVD. #500
MIAMI, FL  33137

MICHEL JARBATH
14325 NE 12TH AVENUE
MIAMI, FL  33161

NANCY K. NEIDICH
POB 279806
MIRAMAR, FL  33027

OFFICE OF THE US TRUSTEE
51 S.W. 1ST AVE.
SUITE 1204
MIAMI, FL  33130

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909
By: /s/ Talle Malkemus
Talle Malkemus, Esquire
Florida Bar Number 99416
Email: tmalkemus@rasflaw.com

# ADJUSTABLE RATE NOTE
# (HOME EQUITY CONVERSION)

FHA Case No.

DECEMBER 11, 2007

14325 NORTH EAST 12TH AVENUE, MIAMI, FLORIDA 33161
[Property Address]

*THIS IS CERTIFIED TO BE A TRUE AND EXACT COPY OF THE SIGNED ORIGINAL*

## 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means
**PACIFIC REVERSE MORTGAGE, INC. / DBA FINANCIAL HERITAGE**

and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **DECEMBER 11, 2007** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not due earlier, are due and payable on **JANUARY 25 , 2092** . Interest will be charged on unpaid principal at the rate of **FOUR AND 670/1000** percent ( **4.6700 %**) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

### (B) Place

Payment shall be made at **PACIFIC REVERSE MORTGAGE, INC. / DBA FINANCIAL HERITAGE,**

**9275 SKY PARK COURT, SUITE 125,
SAN DIEGO, CALIFORNIA 92123**

, or any such other place as Lender may designate in writing by notice to Borrower.

### (C) Limitation of Liability

Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

## 5. INTEREST RATE CHANGES

### (A) Change Date

The interest rate may change on the first day of **MARCH, 2008** , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

### (B) The Index

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board.

"Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of **ONE AND 500/1000** percentage points ( **1.50000 %**) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

### (D) Limits on Interest Rate Changes

☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

☒ The interest rate will never increase above **FOURTEEN AND 670/1000** percent ( **14.67000 %**).

### (E) Notice of Changes

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

30XA : 11/07

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

# 6. BORROWER'S RIGHT TO PREPAY

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

# 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

# 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

# 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

# 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

# 11. RELATIONSHIP TO SECOND NOTE

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

31XA : 06/07

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

(ii) Be obligated to pay interest under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

The state documentary tax due on this Note has been paid on the mortgage securing the indebtedness.

_____     12\11\0 _____ (Seal)
MICHEL JARHATH                                                     -Borrower

_____ (Seal)
                                                                                    -Borrower

32XA : 06/07

# ALLONGE

**LOAN NUMBER:**

**BORROWER(S):** MICHEL JARBATH

**PROPERTY ADDRESS:** 14325 NORTH EAST 12TH AVENUE
MIAMI, FLORIDA 33161

**NOTE/LOAN AMOUNT:** $    442,500.00

**NOTE/LOAN DATE:** DECEMBER 11, 2007

THIS IS CERTIFIED TO BE
A TRUE AND EXACT COPY OF
THE SIGNED ORIGINAL

PAY TO THE ORDER OF:

WITHOUT RECOURSE

**PACIFIC REVERSE MORTGAGE, INC. /DBA FINANCIAL HERITAGE**

ED NELSEN
NAME:

TITLE: **PRESIDENT**

97FI : 01/07

CFN 2007R1216542
OR Bk 26127 Pgs 3270 - 3278; (9pgs)
RECORDED 12/26/2007 11:56:43
MTG DOC TAX 1,548.75
INTANG TAX 885.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Record and Return to:
**PACIFIC REVERSE MORTGAGE, INC. / DBA FINANCIAL HERITAGE**
**9275 SKY PARK COURT, SUITE 125**
**SAN DIEGO, CALIFORNIA 92123**

*Return To:*
*Lenders First Choice*
*1795 Voyager Street*
*Suite 100*
*Simi Valley, CA 00000*

This document prepared by: Linc Connelly

**PACIFIC REVERSE MORTGAGE, INC. / DBA FINANCIAL HERITAGE**
**9275 SKY PARK COURT, SUITE 125**
**SAN DIEGO, CALIFORNIA 92123**

61-8059373 _____ [Space Above This Line For Recording Data] _____

**State of Florida**                                    FHA Case No.

# ADJUSTABLE RATE
# HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **DECEMBER 11, 2007**    . The mortgagor is
**MICHEL JARBATH, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**

whose address is **14325 NORTH EAST 12TH AVENUE,**
**MIAMI, FLORIDA 33161**                                    ("Borrower").
This Security Instrument is given to
**PACIFIC REVERSE MORTGAGE, INC. / DBA FINANCIAL HERITAGE**
                                                    , which is
organized and existing under the laws of **THE STATE OF CALIFORNIA**    , and whose address is
**9275 SKY PARK COURT, SUITE 125, SAN DIEGO, CALIFORNIA 92123**
                        ("Lender"). Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home
Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement").
The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument
("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note,
with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up
to a maximum principal amount of
**FOUR HUNDRED FORTY TWO THOUSAND FIVE HUNDRED AND 00/100 - - - - - - - - - - - - - - - -**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $    **442,500.00**    ); (b) the payment of all other sums, with interest, advanced under Paragraph
5 to protect the security of this Security Instrument or otherwise due under the terms of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. The full debt, including amounts described in (a), (b), and (c) above, if not paid
earlier, is due and payable on JANUARY 25    , 2092    . For this purpose, Borrower does hereby
mortgage, grant and convey to Lender the following described property located in **MIAMI-DADE**
County, Florida:

SF46 : 12/06                        Page 1

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

which has the address of  **14325 NORTH EAST 12TH AVENUE**                                                    ,
                                                           [Street]

**MIAMI**                        ,  **FLORIDA**                   **33161**           ("Property Address");
            [City]                               [State]                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

00XA : 02/02                                    Page 2

Document 20-12020-LMI LLC Image Branch 7 Imaging Window 6202 2003. If Page ID 13

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

03XA : 02/02                                                    Page 3

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **SIXTY DAYS** from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **SIXTY DAYS** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure

04XA : 06/07

Page 4

proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

05XA : 08/07                                   Page 5

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

XB77 : 02/02                              Page 6

21. **Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priorty of any liens for unpaid State or local governmental unit special assessments or taxes.

22. **Adjustable Rate Feature.** Under the Note, the initial stated interest rate of **4.6700** % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **MARCH, 2008** , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **FOURTEEN AND 670/1000** percent ( **14.67000** %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

24. **Compound Interest.** At the end of each month, accrued interest shall be added to and made a part of the principal balance as a Loan Advance and shall likewise thereafter bear interest.

25. **Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

Docusign submitted to Fidelity LLC via Dfi.com/IRI Electronically Imaging Financial Services 05/25/2003. Page 8 of 1

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider     ☐ Shared Appreciation Rider     ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

*Gregory Calliste*
Gregory Calliste

*MICHEL JARBATH*     12/11/07 (Seal) -Borrower

*Barbara Waiters*
Barbara Waiters

*ROZINSKA JARBATH*     (Seal) -Borrower

---

[Space Below This Line For Acknowledgment]

**STATE OF FLORIDA** ,     **MIAMI-DADE COUNTY SS:**

The foregoing instrument was acknowledged before me this 11TH day of DECEMBER, 2007 , by **MICHEL JARBATH**

who is personally known to me or; who has produced as identification and who did (did not) take an oath.

NOTARY PUBLIC-STATE OF FLORIDA
**Gregory Calliste**
Commission # DD472446
Expires: SEP. 15, 2009
Bonded Thru Atlantic Bonding Co., Inc.

*Gregory Calliste*
Notary Public

Name: GREGORY CALLISTE

XB79 : 08/97     Page 8

OR BK 26127 PG 3278
LAST PAGE

EXHIBIT "A"

THE FOLLOWING DESCRIBED LAND LOCATED IN THE COUNTY OF MIAMI-DADE,
STATE OF FLORIDA, TO-WIT:

THE NORTH 1/2 OF THE SOUTH 1/2 OF LOT 160, ARCH CREEK ESTATE,
ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 46, PAGE
73 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY
ASSESSOR AS 30 22200023421; SOURCE OF TITLE IS BOOK 14482, PAGE
2181 (RECORDED 03/26/90)

RECORDING REQUESTED BY:
PACIFIC REVERSE MORTGAGE, INC. /DBA
FINANCIAL HERITAGE

AND WHEN RECORDED MAIL TO:
9275 SKY PARK COURT, SUITE 125

SAN DIEGO, CALIFORNIA 92123



FHA Case Number:
LOAN NO:
Title Order Number:
FHA Originator No:

Space above this line for recorder's use

## CORPORATION ASSIGNMENT OF MORTGAGE/
## DEED OF TRUST/SECURITY DEED

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
EVERBANK REVERSE MORTGAGE LLC

whose address is
700 CORPORATE BOULEVARD, NEWBURGH, NEW YORK 12550

all beneficial interest under that Certain Mortgage/Deed of Trust/Security Deed dated      DECEMBER 11, 2007
executed by
MICHEL JARBATH, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

Borrower, to
PACIFIC REVERSE MORTGAGE, INC. /DBA FINANCIAL HERITAGE

Lender, and recorded concurrently herewith as Instrument Number _____
on _____, _____ in book _____
page _____, of Official Records in the County Recorder's office of
MIAMI-DADE _____ County, FLORIDA _____, describing land therein as:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

00TR : 11/07                                   Page 1 of 2                                          26



ASSIGNMENT

0005974

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage/Deed of Trust/Security Deed.

STATE OF _California_    ss:
COUNTY OF _San Diego_

On _December 17, 2009_ before me,
_R.S. Donato_

a Notary Public in and for said County and State,
personally appeared,

_Ed Nelsen_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted executed the instrument.

WITNESS my hand and official seal

Signature _R.S. Donato_
_R.S. Donato_
Notary Public

PACIFIC REVERSE MORTGAGE, INC./DBA
FINANCIAL HERITAGE

By: ED NELSEN
Title: PRESIDENT

Witness _Kristel Lemen_

R. S. DONATO
COMM. # 1691884
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My COMM. EXP. SEPT. 5, 2010

EXHIBIT "A"


THE FOLLOWING DESCRIBED LAND LOCATED IN THE COUNTY OF MIAMI-DADE,
STATE OF FLORIDA, TO-WIT:

THE NORTH 1/2 OF THE SOUTH 1/2 OF LOT 160, ARCH CREEK ESTATE,
ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 46, PAGE
73 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY
ASSESSOR AS 30 22200023421; SOURCE OF TITLE IS BOOK 14482, PAGE
2181 (RECORDED 03/26/90)

# FLORIDA

COUNTY OF *DADE*
POOL NO.
LOAN NO.

CFN: 20130100291 BOOK 28478 PAGE 700
DATE:02/07/2013  08:24:42 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

**Assignment-Interv.-Recorded**
WHEN RECORDED MAIL TO:
*SECURITY CONNECTIONS INC.*
*240 TECHNOLOGY DRIVE*
*IDAHO FALLS, ID 83401*
PH; (208) 528-9895
ATTN:  TERRILL NIELSON

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that
*METLIFE BANK, N.A., AS SUCCESSOR TO EVERBANK*
*REVERSE MORTGAGE, LLC,*

located at *1555 W.WALNUT HILL LANE #200, IRVING, TX 75038*
"Assignor," in consideration of the sum of *TEN DOLLARS ($10.00)*       and other good
and valuable consideration paid by *CHAMPION MORTGAGE COMPANY*

located at  *350 HIGHLAND DRIVE  LEWISVILLE, TX 75067*
"Assignee", does hereby grant, bargain, assign, transfer and set over unto Assignee
a certain  indenture  of  mortgage  bearing  the  date of *DECEMBER 11, 2007*
made by *MICHEL JARBATH A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY*
                                                    and recorded in
Book *26127*             , page *3270*          , Clerk's File #*2007R1216542*   public records
of *DADE*                     County, Florida, upon the following described property:

*AS DESCRIBED ON SAID MORTGAGE REFERRED TO HEREIN.*

TOGETHER WITH all rights accrued or to accrue under said Mortgage.
TO HAVE AND TO HOLD the same unto the said Assignee, its successors and assigns forever.
IN WITNESS WHEREOF the said Assignor has caused these presents to be executed in its
name by its proper officers thereunto duly authorized this  _____  day of
_____JAN 2 8 2013_____        .

METLIFE BANK, N.A., AS SUCCESSOR TO EVERBANK REVERSE MORTGAGE, LLC

BY: *Janice Robertson*
   Janice Robertson
   *LIMITED VICE PRESIDENT*

STATE OF  *TEXAS*              )
                              ) ss
COUNTY OF  *DALLAS*           )

On  JAN 2 8 2013            , before me, the undersigned, personally appeared
   Janice Robertson          who is known to me to be the person who executed
the within instrument as the *LIMITED VICE PRESIDENT*
                              of the Corporation that executed the within
instrument and acknowledged to me that the Corporation executed the within instru-
ment pursuant to its by-laws or a resolution of its board of directors.

WITNESS my hand and official seal.

*Cherelle Twehgbe Berry*
   Cherelle Twehgbe Berry
NOTARY PUBLIC

CHERELLE TWEHGBE BERRY
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
09-20-2016

PREPARED BY
*Janice Robertson*
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID  83401

P=S.002.00287.83
C=s.064.0945             J=m18070112ai.s.49313

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

IN RE:

CASE NO.: 13-20120-LMI
CHAPTER 13

**Michel Jarbath,**

    **Debtor.**

_____/

## AFFIDAVIT OF INDEBTEDNESS IN SUPPORT OF
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Affiant, _Julius Perkins_____, being first duly sworn according to the law, deposes and says the following:

1. I am employed as a _Bankruptcy Specialist_____ of NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY ("Secured Creditor") and am authorized to sign this affidavit on behalf of Secured Creditor. This affidavit is provided in support of the Motion for Relief from the Automatic Stay ("Motion") filed contemporaneously herewith.

2. I base this Affidavit on my personal knowledge, gained through review of Secured Creditor's business records regarding the Note, Mortgage, and other loan documents securing the real property located at 14325 NE 12TH AVENUE, MIAMI, FL 33161. The Mortgage associated with this loan is a reverse mortgage.

3. Secured Creditor is responsible for the collection of this loan transaction.

4. In the regular performance of my job functions, I am familiar with business records maintained by Secured Creditor for the purpose of servicing mortgage loans. These records (which include data compilations, electronically imaged documents, and others) are made at or near the time of the occurrences or transactions recorded therein by a person with knowledge, or from information provided by a person with knowledge, and are kept in the course of business activity conducted regularly by Secured Creditor. It is the regular practice of Secured Creditor's mortgage-servicing business to make these records.

5. The Note was not in any particular amount, as the amounts advanced under the "reverse mortgage" loan depend upon the draws the borrower makes on the account. Repayment of the amounts lent under the terms of the Note was not to commence until the loan matured.

6. The loan balance continues to grow even if the Borrower halts taking cash advances. This is due to compounding interest and various fees and advances that are added to the loan balance each month. In a reverse mortgage, all advances are added to the loan balance, per the terms of the Note.

7. The terms and conditions of the Note and Reverse Mortgage are in default due to failure to perform an obligation under the Reverse Mortgage by failure to maintain property insurance.

8. The default has not been cured. After a review of the records, Affiant states that the balance due on the Reverse Mortgage and Note is 253,535.54.

9. I have reviewed the documents attached as exhibits to the Motion and they are true and accurate copies of the original documents as imaged in our system and provided to our attorney.

10. This Affidavit is signed under penalty of perjury as being true and correct based on my personal knowledge of Secured Creditor's business records. I am over 18 years of age and am competent to testify about the facts contained herein.

**FURTHER AFFIANT SAYETH NAUGHT.**

Executed this _19_ day of _May_, _2016_ .

Name: _Julius Perkins_
Title: _Bankruptcy Specialist_

**STATE OF** _Texas_
**COUNTY OF** _Dallas_

SUBSCRIBED and SWORN to before me on this _19th_ day of _May_, 20_16_, by _Julius Perkins_, ☑ known to me (☐ or satisfactorily proven to me through production of _____ as identification) to be the person(s) who appeared before me.

(SEAL)

_Joel Martinez Jr._
(Type or print name below signature) Joel Martinez Jr.
Notary Public, State of _TX_
Commission No.: _13023566-3_
My Commission Expires: _5-21-2019_

JOEL MARTINEZ JR.
Notary Public, State of Texas
My Commission Expires
May 21, 2019

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

IN RE:                                                        CASE NO.: 13-20120-LMI
                                                                    CHAPTER 13
**Michel Jarbath,**

  **Debtor.**

_____/

## INDEBTEDNESS WORKSHEET

**Debt as of Petition Date**

Total pre-petition indebtedness of debtor(s) to Movant **$235,865.85**

    **Amount of principal: $235,426.76**

    **Amount of interest: $317.34**

    **Amount of escrow (taxes and insurance): $0.00**

    **Amount of forced placed insurance expended by Movant: $0.00**

    **Amount of attorneys' fees and costs billed to debtor(s) pre-petition: $0.00**

    **Amount of pre-petition late fees, if any, billed to debtor(s): $0.00**

    **Any additional pre-petition fees, charges or amounts charged to debtor account and**

    **not listed above: $0.00 (property inspection fees); $0.00 (broker's price opinion fee)**

Contractual Interest Rate:  1.64%

  

16-033240 - JeM

## Amount of Alleged Post-Petition Default
### (As of May 17, 2016)

**Date last payment was received: This is a Reverse Mortgage**

**Alleged total number of payment due post-petition from filing of petition through due on 5/13/2016: N/A**

**All post-petition payments alleged to be in default:**

| Alleged Amount Due Date | Alleged Amount Due | Amount Received | Amount Applied to Principal | Amount Applied to Interest | Amount Applied to Escrow | Late Fee Charged (if any) |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| Total: | $0.00 | $0 | $0 | $0 | $0 | $0 |

**Amount of movant's attorney's fees billed to debtor for the preparation and filing and prosecution of this motion**: $850.00

**Amount of movant's filing fee for this motion:** $176.00

**Other attorney's fees billed to debtor post-petition:** $0.00

**Amount of post-petition inspection fees:** $0.00

**Amount of movant's post-petition appraisal broker's price opinion:** $0.00

**Amount of forced place insurance or insurance provided by the movant post-petition:** $3,193.91

**Sum held in suspense by movant in connection with this contract, if applicable:** $0.00

**Amount of other post-petition advances or charges, for example, taxes, insurance incurred by debtor, etc. (itemize each charge):** $0.00

**Total post-petition debt: $4,043.91**

16-033240 - JeM



**IMPORTANT MESSAGE** The Property Appraiser does not send tax bills and does not set or collect taxes. Please visit the Tax Collector's website directly for additional information.

| Address | Owner Name | Folio |

# SEARCH:

| 14325 Ne 12th Avenue | Suite | 🔍 |

Back to Search Results

## PROPERTY INFORMATION

**Folio:** 30-2220-002-3421

**Sub-Division:**
ARCH CREEK ESTS

**Property Address**
14325 NE 12 AVE
Miami, FL  33161-2504

**Owner**
MCHEL JARBATH

**Mailing Address**
14325 NE 12 AVE
MIAMI, FL 33161-2504

**Primary Zone**
5700 DUPLEXES - GENERAL

**Primary Land Use**
0101 RESIDENTIAL - SINGLE FAMILY : 1 UNIT

| Beds / Baths / Half | 1 / 1 / 0 |
|---|---|
| **Floors** | 1 |
| **Living Units** | 1 |

| | |
|---|---|
| **Actual Area** | |
| **Living Area** | |
| **Adjusted Area** | 1,726 Sq.Ft |
| **Lot Size** | 7,059.86 Sq.Ft |
| **Year Built** | 1967 |



**Featured Online Tools**

| | |
|---|---|
| Comparable Sales | Glossary |
| Non-Ad Valorem Assessments | PA Additional Online Tools |
| Property Record Cards | Property Search Help |

Property Taxes

Report Homestead Fraud

Tax Estimator

Value Adjustment Board

Report Discrepancies

Tax Comparison

TRIM Notice

## ASSESSMENT INFORMATION

| Year | 2015 | 2014 | 2013 |
|------|------|------|------|
| Land Value | $21,259 | $12,991 | $12,991 |
| Building Value | $78,219 | $76,711 | $62,097 |
| Extra Feature Value | $1,801 | $1,822 | $1,843 |
| Market Value | $101,279 | $91,524 | $76,931 |
| Assessed Value | $78,708 | $78,084 | $76,931 |

## TAXABLE VALUE INFORMATION

| | 2015 | 2014 | 2013 |
|------|------|------|------|
| **COUNTY** | | | |
| Exemption Value | $50,000 | $50,000 | $50,000 |
| Taxable Value | $28,708 | $28,084 | $26,931 |
| **SCHOOL BOARD** | | | |
| Exemption Value | $25,000 | $25,000 | $25,000 |
| Taxable Value | $53,708 | $53,084 | $51,931 |
| **CITY** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $0 | $0 | $0 |
| **REGIONAL** | | | |
| Exemption Value | $50,000 | $50,000 | $50,000 |
| Taxable Value | $28,708 | $28,084 | $26,931 |

## BENEFITS INFORMATION

| Benefit | Type | 2015 | 2014 | 2013 |
|---------|------|------|------|------|
| Save Our Homes Cap | Assessment Reduction | $22,571 | $13,440 | |
| Homestead | Exemption | $25,000 | $25,000 | $25,000 |
| Second Homestead | Exemption | $25,000 | $25,000 | $25,000 |

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

## FULL LEGAL DESCRIPTION

ARCH CREEK ESTS PB 46-73

N1/2 OF S1/2 OF LOT 160

LOT SIZE 66.000 X 106

OR 14482-2181 0390 1

COC 26127-3268 12 2007 5

## SALES INFORMATION

| Previous Sale | Price | OR Book-Page | Qualification Description |
|---|---|---|---|
| 03/01/1990 | $82,000 | 14482-2181 | Sales which are qualified |
| 09/01/1978 | $45,000 | 10171-0333 | Sales which are qualified |

For more information about the Department of Revenue's Sales Qualification Codes.

| 2015 | 2014 | 2013 |
|---|---|---|

## LAND INFORMATION

| Land Use | Muni Zone | PA Zone | Unit Type | Units | Calc Value |
|---|---|---|---|---|---|
| GENERAL | RU-2 | 5700 - DUPLEXES - GENERAL | Front Ft. | 65.98 | $21,259 |

## BUILDING INFORMATION

| Building Number | Sub Area | Year Built | Actual Sq.Ft. | Living Sq.Ft. | Adj Sq.Ft. | Calc Value |
|---|---|---|---|---|---|---|
| 1 | 1 | 1967 | | | 1,498 | $67,253 |
| 1 | 2 | 1997 | | | 128 | $7,756 |
| 2 | 1 | 1975 | | | 100 | $3,210 |

## EXTRA FEATURES

| Description | Year Built | Units | Calc Value |
|---|---|---|---|
| Screen Enclosure - Better- heavier gauge frm +8' | 1997 | 270 | $1,569 |
| Patio - Concrete Slab | 1967 | 108 | $232 |

## ADDITIONAL INFORMATION

* The information listed below is not derived from the Property Appraiser's Office records. It is provided for convenience and is derived from other government agencies.

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

**IN RE:**                                                        **CASE NO.: 13-20120-LMI**
                                                                        **CHAPTER 13**

**Michel Jarbath,**

  **Debtor.**

_____/

### ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

THIS CASE came on for hearing on _____, on NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY's ("Secured Creditor") Motion for Relief from the Automatic Stay (Docket No. __). The Court heard argument of the Parties and has based its decision on the record.  Accordingly, it is:

**ORDERED**:

1.    Secured Creditor's Motion for Relief from Automatic Stay is GRANTED.

2.    The automatic stay imposed by 11 U.S.C. § 362 is terminated as to the Secured Creditor's interest in the following property located at 14325 NE 12th Avenue, MIAMI, FL 33161 in Miami-Dade County, Florida, and legally described as:

THE FOLLOWING DESCRIBED LAND LOCATED IN THE COUNTY OF MIAMI-DADE, STATE OF FLORIDA, TO-WIT:

16-033240 - JeM

EXHIBIT "E"

THE NORTH 1/2 OF THE SOUTH 1/2 OF LOT 160, ARCH CREEK ESTATE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 46, PAGE 73 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

3.  The Order Granting Relief from Stay is entered for the sole purpose of allowing Secured Creditor to exercise any and all *in rem* remedies against the property described above. Secured Creditor shall not seek an in *personam* judgment against Debtors.

4.  Secured Creditor is further granted relief in order to contact the Debtor(s) by telephone or written correspondence in order to discuss the possibility of a forbearance agreement, loan modification, refinance agreement or loan workout/loss mitigation agreement.

5.  Attorneys' fees in the amount of $674.00 and costs in the amount of $176.00 are awarded for the prosecution of this Motion for Relief from Stay, but are not recoverable from the Debtor(s) or the Debtor(s)' Bankruptcy estate.

### 

Submitted By:
Talle Malkemus, Esq.
Robertson, Anschutz & Schneid, P.L.
*Attorney for Creditor*
6409 Congress Ave., Suite 100
Boca Raton, FL 33487

Talle Malkemus, Esq. is directed to serve copies of this order on the parties listed and file a certificate of service.

JACQUELINE C LEDON
3000 BISCAYNE BLVD. #500
MIAMI, FL  33137

MICHEL JARBATH
14325 NE 12TH AVENUE
MIAMI, FL  33161

NANCY K. NEIDICH
POB 279806
MIRAMAR, FL  33027

OFFICE OF THE US TRUSTEE
51 S.W. 1ST AVE.
SUITE 1204
MIAMI, FL  33130